**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| **AARON C. ROBERTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO. 5:06-00964** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Doc. Nos. 14 and 17.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 6 and 7.)

The Plaintiff, Aaron C. Roberts (hereinafter referred to as "Claimant"), filed an application for DIB on June 24, 2004, alleging disability as of December 1, 2003, due to arthritis in both knees and wrists, as well as depression. (Tr. at 13, 67, 99, 100-01.) The claim was denied initially and on reconsideration. (Tr. at 67-69, 73-75.) On April 25, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 76.) The hearing was held on February 22, 2006, before the Honorable Thomas R. King. (Tr. at 26-64.) By decision dated June 30, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-25.) The ALJ's decision became the final decision of the Commissioner on September 14, 2006, when the Appeals Council denied Claimant's

request for review. (Tr. at 6-9.) On November 14, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

>      (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ reserved a finding on whether Claimant engaged in substantial gainful activity after his alleged onset date of disability because the record was not clear as to whether the earnings received after that date were "for work actually performed and constituted substantial gainful activity." (Tr. at 17.) Under the second inquiry, the ALJ found that Claimant suffered from morbid obesity, degenerative arthritic changes in both knees, and depression, which were severe impairments. (Tr. at 18-20, 21.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20.) The ALJ then found that Claimant had a residual functional capacity for sedentary work, with limitations as follows:

> [C]laimant retains the residual functional capacity to perform the exertional requirements of work that does not involve lifting and carrying more than 10 pounds. He is capable of standing and/or walking at least two hours out of eight and sitting at least six hours out of eight, provided he is allowed the opportunity to alternate sitting/standing at his discretion. Considering his obesity and arthritic changes in his knees, he is capable of performing the non-exertional requirements of work that does not involve more than occasional bending/stooping, kneeling or squatting. Given the effects of depression on his ability to maintain concentration for extended periods and his limited education which preclude complex reading or writing, he is capable

5

>of understanding, remembering and carrying out no more than simple job tasks, making simple work-related decisions, and does not involve complex reading or writing. These limitations and restrictions will allow the claimant to avoid those activities which might tend to exacerbate his symptomatology. The claimant is capable of performing this level of work activity on a sustained, regular and continuous basis with regular breaks and a lunch period being sufficient.

(Tr. at 21-22.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 22.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearings, the ALJ concluded that Claimant could perform the job of a security monitor, at the sedentary level of exertion. (Tr. at 22-23.) On this basis, benefits were denied. (Tr. at 24-25.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

>evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on October 27, 1958, and was 47 years old at the time of the administrative hearing. (Tr. at 16, 30.) Claimant had a tenth grade education. (Tr. at 16, 30.) In the past, he worked as a landscaper, security guard, and maintenance worker. (Tr. at 16, 32-39, 56, 114-17.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in assessing Claimant's pain and credibility; (2) erred in not giving great weight to the opinions of Claimant's treating physicians, Dr. Abigail Winters and Dr. Douglas R. Eitel, M.D.; and (3) excluded impairments from his residual functional capacity ("RFC") analysis. (Doc. No. 14 at 13-18.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Doc. No. 17 at 11-19.)

**Pain and Credibility.**

Claimant first argues that the ALJ improperly evaluated his subjective complaints of pain and erred in finding Claimant not entirely credible. (Doc. No. 14 at 13-16.) Claimant asserts that the medical records, particularly the records of his treating physician, Dr. Abigail Winters, demonstrate a consistent medical history of diagnostic tests, physical exams, and laboratory work, which support his complaints of pain and other symptoms. (<u>Id.</u> at 14-15.) In assessing his limitations however, Claimant argues that the ALJ failed to determine "whether or not the claimant had medical

7

conditions which could cause the pain complained of.", as required at step one of the two-step analysis established in Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). (Doc. No. 14 at 15.)

Citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986), the Commissioner asserts that pain is not *per se* disabling and that the ALJ's pain and credibility assessment is supported by substantial evidence, as Claimant's subjective complaints were not supported by the evidence of record. (Doc. No. 17 at 11-12.) The Commissioner asserts that the medical record contains only modest objective findings and demonstrates that Claimant responded to treatment and did not require strong prescription pain medications. (Id. at 12.) He further asserts that Dr. Winters' lifting and carrying limitations as stated in his September 13, 2005, report are consistent with sedentary work as identified by the ALJ. (Id. at 13.) The Commissioner notes that the state agency physicians opined that Claimant was capable of performing light exertional level work. (Id.) Moreover, the Commissioner asserts that Claimant's reported activities are inconsistent with a finding of disability. (Id. at 13-14.) Regarding Claimant's allegation that the ALJ failed to find that he had a medical condition that could reasonably result in complaints of pain, the Commissioner argues that because the ALJ satisfied step two of the Craig analysis, "it logically flows that Plaintiff had a medical impairment that could result in some complaints of pain. To suggest otherwise would mean the ALJ was never obliged to reach step two of the pain analysis, which he did." (Id. at 14.)

> To accept Plaintiff's position, and set aside the two-step pain analysis findings because Plaintiff does not believe step one is sufficiently articulated, is an exercise in futility when the critical finding necessary for judicial review is adequately articulated. Plaintiff's findings support the existence of medical impairments and resulting limitations, they do not "support the severity of the claimant's limitations." (Pl.'s Br. at 16).

(Id.) Therefore, the Commissioner asserts that the ALJ's assessment of Claimant's credibility was consistent with the Regulations and law, and is supported by substantial evidence. (Id.)

8

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. § 404.1529(b) (2006); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4) (2006). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

9

      (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

      (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

      (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2006).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ

rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In view of error it found in the ALJ's pain analysis, the Craig Court remanded, stating its reasoning as follows:

> [T]he ALJ did not expressly consider the threshold question of whether Craig had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. . . . Accordingly, we remand to the ALJ to determine whether Craig has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains. If the ALJ concludes that she does, then, and only, then, should it undertake an assessment into the credibility of Craig's subjective claims of pain.

Craig, 76 F.3d at 596. Relying upon this language in Craig, this Court remanded in Hill v. Commissioner of Social Security, 49 F.Supp.2d 865, 869 (S.D. W.Va. 1999) (Hallinan, J.), for consideration of the threshold issue in the pain analysis over the Commissioner's contention that it would be a waste of judicial and administrative resources because Mr. Hill would still be found not disabled. Judge Hallinan stated as follows:

> For the Court to make a determination when reviewing whether the ALJ's decision is supported by substantial evidence, the Court expects those below to conduct a full and intensive review of the record. Justice and fairness demands nothing less. To say that the results would be the same upon a second, more comprehensive review and explanation of the record, and therefore should not be done at all, would be to deny the Claimant his right to a fair decision, and in addition, deny the Court of a fully developed record of review.

Hill, 49 F.Supp.2d at 870. In Arnold v. Barnhart, Civil Action No. 1:04-0422 (S.D. W.Va. Sept. 29, 2005), this Court further held that Craig mandates "that an ALJ must make an *explicit* determination that a claimant has or has not proven an underlying medical impairment that could cause the pain alleged by the claimant." Id. at 11.

11

> [T]he ALJ's failure to expressly reach a conclusion regarding the first part of the pain disability test, the threshold question of whether a claimant has "an underlying medical impairment that could reasonably be capable of causing the pain alleged," constitutes a failure to apply the correct legal standard in determining that a claimant is not disabled by pain.

Id. at 14; see also, Bradley v. Barnhart, 463 F.Supp.2d 577, 581-82 (S.D. W.Va. 2006) (J. Copenhaver) (in remanding, the Court stated: "While the Commissioner's position is not an illogical one, the direction in Craig is to be followed. Indeed, if it is determined that the claimant has demonstrated by objective medical evidence an impairment or impairments capable of causing the degree and type of pain he alleges, the supporting findings to that effect may shed some light on the credibility of his subjective claims of disabling pain.").

In the instant case, the ALJ found under the second inquiry of the sequential analysis that Claimant had severe impairments, including morbid obesity, degenerative arthritic changes in both knees, and depression. (Tr. at 18-21, 24, Finding No. 3.) Having determined that Claimant's severe impairments did not meet or medically equal the criteria of any impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the ALJ moved on to consideration of Claimant's residual functional capacity. (Tr. at 20, 24, Finding No. 3.) In this context, the ALJ noted that the record did not support the degree of limitation claimed and that Claimant's severe impairments produced "nominal effects of mild to moderate pain/discomfort." (Tr. at 21.) The ALJ reviewed the evidence of record, as well as Claimant's reported activities, and found that Claimant could perform sedentary work with certain limitations as stated above. (Tr. at 21-22.) However, without expressly applying the first, threshold portion of the two-part pain and credibility analysis outlined above, the ALJ found Claimant's subjective complaints and testimony as to the intensity, persistence, and limiting effects of his claim to be unpersuasive. (Tr. at 21.) The ALJ cited the pertinent Regulations, 20 C.F.R. § 404.1529, as

well as SSR 96-7p, but began his analysis with the limiting effects of Claimant's alleged pain on his work capabilities. (Tr. at 15, 21.) Under the second prong, the ALJ summarized Claimant's testimony and the medical evidence of record in analyzing the intensity and persistence of Claimant's pain and other symptoms. (Tr. at 21.) The ALJ stated in part, as follows:

> The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible given the overall medical evidence of record, including the rather modest objective findings on physical examinations, the positive response to treatment, the sporadic and conservative nature of treatment since the arthroscopic left knee surgery, and the lack of strong pain medication. His description of daily activities is also inconsistent with a complete inability to work. He lives with his wife and two children. While he does not help with the household chores, such as laundry, cleaning, or shopping, he states that he can prepare himself a sandwich when he's home alone. He also states that he sometimes helps out with the dishes and folding laundry. He attends Church, spends time sitting on the porch/carport watching cars go by, watches television, and visits with friends. Although he reported [he] requires some assistance, such as washing his feet, he is otherwise independent in personal care. He informed the consulting psychologist in September 2004 that the day prior to his appointment he had gotten his bow out and shot it in the yard about four times before he quit. (Exs. 4E; 10F, p.3). He testified that if he goes out to hunt he goes in the truck because it bothers his back. It is also noteworthy that in July 2004 the claimant reported he could lift 20 to 30 pounds (Ex. 4E, p. 6) whereas, about six months later, in January 2005, without any objective medical evidence showing any significant worsening in his overall condition, he stated he could lift only about 10 pounds (Ex. 7E, p. 6).

(Tr. at 21.) The ALJ clearly considered the requisite factors under the second part of the analysis, noting Claimant's reported daily activities, his medications and side effects therefrom, and the statements made by treating and examining physicians. Nevertheless, pursuant to this Court's holding in Arnold, the ALJ's failure to make an explicit determination that Claimant had established an underlying medical impairment that could cause the pain alleged, constitutes reversible error.

Based upon the foregoing, the Court concludes that this matter must be remanded for further administrative proceedings consistent with this Memorandum Opinion. The Court makes no recommendation or conclusion with regard to Claimant's disability status; that decision is reserved

13

solely for the Commissioner. Upon remand, the Court requests only that the ALJ comply with all applicable Regulations when deciding whether Claimant's allegations regarding his pain and other symptoms are credible. The Court also notes that Claimant raises other objections in his Motion, but the Court will not address those issues at this time due to the fact that the case should be remanded on other grounds.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 14.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 17.) is **DENIED**, the final decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings and is **DISMISSED** from the active docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 28, 2008.

R. Clarke VanDervort
United States Magistrate Judge